(118 App. Div. 334)

### BEARDMORE v. BARRY.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. EVIDENCE—UNDERSTANDING OF PARTIES—MEANING OF CONTRACT.

Evidence as to the understanding of the parties as to the meaning of the words "more or less," in a written contract for sale of land described by courses and distances, and reciting "said dimensions being more or less," is incompetent in an action based on the contract as it stands.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2106.]

103 N.Y.S.—23

2. VENDOR AND PURCHASER—RIGHT OF PURCHASER TO RECOVER MONEY PAID—
BREACH OF CONTRACT.

A contract to sell for a gross sum a tract described by courses and distances, one of the distances being 171.25 feet along a street, there was no breach of the contract providing "said dimensions being more or less," by the vendor, so as to entitle the purchaser to refuse to take a deed describing the land as in the contract, and to recover the down payment and expenses of examining title, though the vendor can without controversy show record title to only 170 feet on the street, with probably right, because of a surplus in the block and adverse possession, to at least 1.25 feet more.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 329.]

Appeal from Special Term.

Action by Thomas J. Beardmore against Elizabeth M. Barry. From a judgment for defendant dismissing the complaint on the merits after a trial of the issues, plaintiff appeals. Affirmed.

This is an action brought by the assignee of the vendee under a contract for the sale of a parcel of real estate in the city of New York to recover the amount paid to apply on the purchase price and the expenses incurred for counsel fees and disbursements in the examination of the title. The contract was made between defendant and plaintiff's assignor on the 28th day of November, 1904. Defendant therein agreed to convey to plaintiff's assignor the following described premises: "All that certain piece or parcel of land, with the buildings thereon erected, situate, lying and being in the Twenty-Third Ward of the city of New York, bounded and described as follows: Beginning at a point on the northwesterly side of Boston avenue, formerly Boston Road, distant two hundred and thirty-nine and twenty-four one-hundredths feet (239.24) southwesterly from the corner formed by the intersection of the southerly side of One Hundred and Sixty-Eighth street and the northwesterly side of Boston avenue, thence running northwesterly and parallel with One Hundred and Sixty-Eighth street, one hundred and sixty-three and three one-hundredths feet (163.03); thence southwesterly and parallel with Boston avenue, one hundred and seventy-one and fifteen one-hundredths feet (171.15); thence southeasterly and again parallel to One Hundred and Sixty-Eighth street, one hundred and sixty-three and eighty-two one-hundredths feet (163.82) to the northwesterly side of Boston avenue, and thence northeasterly along the northwesterly side of Boston avenue, one hundred and seventy-one and twenty-five one-hundredths feet (171.25) to the point of beginning; said dimensions being more or less. And being the same premises conveyed to the party of the first part by James and Charles Whealen, by deed, dated Sept. 7th, 1892, and recorded in Liber 4, page 121, under block No. 2614 of section 10, and known at present as No. 1169 Boston Road, New York City."

The consideration specified was $75,000, and it was not left to depend on feet frontage or square feet or quantity. The vendor agreed at her own proper cost and expense to "execute, acknowledge and deliver to the said party of the second part, or to his assigns, a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to him or them, the fee simple of said premises, free from all incumbrances," excepting certain restrictions not here involved. The premises in question were on the 29th day of May, 1876, owned by one Lucia L. Fitch and James P. Fitch, and on the foreclosure of a mortgage executed by them on that day title passed to one Wensley on the 15th day of December, 1879, and by mesne conveyances to one James Whealen on the 31st day of May, 1884. The description contained in the judgment of foreclosure and in the subsequent conveyances upon which Whealen's title rested is the same. This description, so far as material, described the premises as lot No. 133 on a map entitled "Map of the Village of Morisania made by Andrew Findlay, surveyor, dated West Farms, Aug. 10, 1848, and filed in the office of the register of the county of Westchester"; and after describing the entire lot, giving metes and bounds, showing a frontage

of 205 feet on Boston avenue, it contains a clause as follows: "Excepting and reserving thereout a strip of land on the northerly side of said lot thirty-five feet in width"—which is also described by metes and bounds. Findlay's map shows lots numbered 124, 133, and 134 fronting on Morse avenue (Boston avenue) between Sixth street on the north (now 168th street) and Fifth street on the south (now 167th street), and gives the frontage of lot 133 on Morse avenue as 205 feet, which, after deducting the 35 feet on the north, excepted from the conveyances, would leave 170 feet frontage conveyed by the deed. On June, 12, 1884, Whealen mortgaged the premises to one Burns, and therein described them as having a frontage of 170 feet on Morse avenue, and on December 10, 1887, he conveyed a one-half interest to his brother Charles by the description by lot number, metes and bounds, and excepting said 35 feet off the northerly side. On September 7, 1892, James and Charles Whealen conveyed the premises to defendant by the same description as is contained in the contract of sale, wherein it appears that the frontage of said premises on Boston avenue (formerly Boston Road and Morse avenue) is given as 171.25 feet, which is the first attempt to convey more than 170 feet frontage. On the 7th day of April, 1905, the final adjourned day for closing title under the contract, it appears that the parties met at the office of the company which was examining the title for the plaintiff; defendant and plaintiff being represented by counsel, and plaintiff's assignor attending in person. Defendant's counsel first tendered a deed which contained the description of the property according to the contract, giving the starting point as 239.24 feet south of the intersection of the southerly line of 168th street and Boston avenue. This plaintiff's counsel refused to accept, on the ground that it did not contain the proper description, whereupon counsel for defendant tendered a second deed containing the same description, with the exception that the starting point was given as 229.24 feet south from 168th street, which plaintiff's counsel also refused to accept on the same ground. Plaintiff's counsel testified that he asked defendant's counsel if they claimed adverse possession to anything beyond 170 feet, and that, if they had any proof of adverse possession, he would like to see it then, and that defendant's counsel replied that they would not discuss that question, and did not care to offer any proof; that the only claim defendant's counsel made in regard to their title to a frontage greater than 170 feet was that there was a surplusage in the block, but that he refused to offer any proof as to such surplusage; that plaintiff's counsel offered to give defendant an adjournment for the purpose of satisfying plaintiff that they were in possession of the additional 1.25 feet, but this adjournment was refused, and defendant's counsel insisted upon his tender; that plaintiff then refused to sign the bond or to take the deed, and demanded the return of the money paid and $400 for counsel fees, which demand was refused. Defendant's counsel testified on cross-examination that he did not claim that any explanation was made as to how defendant claimed title to the additional 1.25 feet, and admitted that he said on the day the tender was made that he was not obliged to give any proof on that point. After this meeting between the parties, and on April 17, 1905, plaintiff began this action. In addition to demanding a vendee's lien for the amount paid, and that the premises be also charged with the expenses of having the title examined and interest, plaintiff demanded specific performance of the contract, or that it be decreed that defendant convey so much of the property described in the agreement as she might have record title to, with an allowance to the plaintiff for so much of said property as the defendant might be unable to convey, and filed a lis pendens. Upon the trial plaintiff withdrew his prayer for specific performance. The answer was a general denial.

It appears that there was an old framehouse toward the northerly side of the premises, and otherwise they are vacant. On the north a brick apartment house or flat had been erected, covering or substantially covering the 35 feet of the northerly side of the lot, excepted in the conveyances. On the south, and forming the lot line between lots Nos. 133 and 134, was an iron pipe or picket fence. The vendee testified that he had a conversation with defendant in regard to the boundaries of the property before the contract was signed; that she told him she owned from the fence on the southerly side to the apartment house on the northerly side, and that she had 173 feet; that

after the contract was negotiated, but before it was signed, he made a down payment of $100 to the vendor's husband, and received a receipt describing the property as No. 1169 Boston Road, and giving the frontage as 173 feet by 165 feet in depth, "more or less"; that at the time the contract was signed he had a conversation with defendant's husband in respect to the meaning of the words, "said dimensions being more or less," contained therein; that the contract was made out with a description of 171 feet 3 inches, and that there was a conversation in regard to the variance in such description in the contract and the deed, the substance of which was that he said he would accept a deed conveying 171 feet, but that, if it fell below that measurement, he would not buy the property; that the attorney for defendant thereupon said that what was meant by the words "more or less" was a difference of an inch or an inch and a half, and this last statement is not contradicted.

A surveyor, called by plaintiff, testified that the Findlay map had been generally accepted and adopted by civil engineers and surveyors as a correct map of the block between 167th and 168th streets and vicinity; that the iron pipe fence on the southerly side of lot No. 133 was in the same position as the old fence between lots 133 and 134, as shown upon the Findlay map; that, according to a survey made by him, the frontage actually occupied by the defendant on Boston avenue was 171.23 feet, commencing 229.22 feet southerly from the southerly line of 168th street. The additional 1.23 feet not included in those descriptions which specified the frontage as 170 feet must be to the north, as there was no question but that the southerly boundary, as the land is occupied, is in accordance with the correct line between said lots 133 and 134. The surveyor for plaintiff gives the distance from that boundary line to the present southerly line of 168th street as 400.45 feet. The surveyor for defendant does not differ with him materially on this point, which indicates that there is a surplusage about three feet in lots 124 and 133, because the aggregate frontages of those lots as given on the Findlay map is 407.5 feet and 10 feet have since been taken to widen 168th street, which would have according to the Findlay map been only 397.5 feet. Plaintiff's surveyor further testified that taking the starting point as 229.22 feet south from 168th street, which he found to be the proper starting point and which is substantially the distance given in the second deed tendered—229.24—a strip of land 1.58 feet in width would still be left between defendant's northerly line and the wall of the flat or apartment on the north, making the distance from the southerly line of lot 133 to said wall 172.81 feet.

A surveyor called by defendant testified that there was a surplusage in the block between 168th and 167th streets of 2.14 feet, which, if divided pro rata between the lots in the block, excluding the 35 feet, the parcel in question, the 170 feet frontage would receive $74/100$ of a foot; that he did not know that any apportionment of the surplusage had ever been made; that the actual distance between the brick wall on the north and the pipe line fence on the south was 172.70 feet; and, in effect, that this entire frontage between the wall on the north and the fence on the south was in possession of defendant. He also testified that the actual distance from 168th street to the starting point of the defendant's property, as fixed by his measurements, was 228.14 feet, and that, therefore, the description in neither deed tendered to plaintiff was correct, as the first gave this distance as 239.24 and the second just 10 feet less.

The defendant did not plead title by adverse possession, and, as already appears, at the time she tendered the deeds to plaintiff no claim was made of adverse possession of the additional 1.25 feet over the 170 feet. Defendant was permitted to show over objection and exception duly taken by plaintiff that it was not within the issues; that James Whealen occupied the premises from the time he purchased May 31, 1884, until he sold them to the defendant in 1892; that the only interference with the fences during the time he lived there was that part of a picket fence which was leaning over was straightened and repaired without affecting the fence line. The husband of the defendant also testified that he had lived in the house on the premises with his wife continuously since she purchased from Whealen in 1892, and that there had been no change in the fence lines except that some of the posts were renewed, the old holes being used; that the property was inclosed when she purchased it

and was inclosed at the time of the trial; and that, when the contract was signed, the attention of plaintiff's assignor was called to the fact that the measurement was not given the same as in the receipt, and he replied that it was all right.

The court found, in effect, that on the date for closing the contract defendant had good title and was ready, willing, and able to perform, and duly tendered performance, and that neither plaintiff nor his assignor was ready or willing to perform, but refused to perform, the contract. The view taken by the trial court, as indicated in the opinion, was that defendant had title to $74/100$ of a foot, in addition to the 170 feet, by reason of the surplusage in the block, and that the question presented was whether plaintiff should be relieved from accepting title to the lot with a frontage of 170.74, instead of 171.25, the dimensions of frontage in the contract, notwithstanding the insertion therein of the words "more or less."

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Gustavus A. Rogers, for appellant.
Hugo Hirsh, for respondent.

LAUGHLIN, J. The evidence with respect to the understanding of the parties as to the meaning of the words "more or less" was, of course, incompetent in an action based on the contract as it stands. The evidence shows good record title in the defendant to the southerly 170 feet of the premises described in the contract and in the second deed tendered by her. The testimony of the surveyor called by the defendant that the description in neither deed was correct, owing to the fact that he located the defendant's northerly boundary line 228.14 feet southerly from the southerly line of 168th street, which is not the boundary line described in either deed tendered, manifestly is to be construed as indicating that in his judgment, owing to the surplus land in the block over the frontage given in the Findlay survey, the defendant owns $1^1/10$ feet more than 171.25 feet, because the surveyors do not disagree about the southerly line, and therefore, if defendant's northerly line commences 228.14 feet from the southerly line of 168th street, she should own 172.36 feet. As shown in the statement of facts, there is no conflict in the evidence with respect to the location of the southerly boundary line of lot 133. All concede that that line is fixed and established and corresponds with the fence constructed thereon. It thus appears without controversy that defendant had good record title to 170 feet, and that she was in possession of 171.25 feet or more. The evidence clearly shows a surplusage in frontage between the southerly line of lot 133 and the southerly line of 168th street of several feet over the measurements shown on the Findlay map. Without the presence before the court of the owners of the northerly 35 feet of lot 133 and of lot 124, the ownership of this surplusage cannot be authoritatively adjudicated. It may be that the construction of the brick wall and building constitute a practical location of the line between the defendant and the abutting owner on the north. The evidence is not sufficiently definite to establish title to this surplusage by adverse possession; but it renders it highly probable that defendant would be entitled to at least 1.25 feet of the surplusage, if not more, and that she has been in possession thereof such a length of time that it is improbable that there will be any at-

tempt to disturb her possession, or that of her successor in interest. It is to be borne in mind that plaintiff's assignor purchased this parcel of land for a gross sum; and that although there was uncertainty as to the frontage, as is indicated by the fact that the description contained in the receipt first given gave the frontage as 173 feet, and that this was reduced to 171.25 feet when the contract came to be executed, and that even then the contract contains the express provision, referring to the measurements, "said dimensions being more or less." The defendant shows good record title approximately—and sufficiently, in view of the form of the contract—to the amount of land specified in the contract; and it is reasonably certain that her possession of the remainder has ripened into title, or will ripen into title without molestation. There has been no fraud or misrepresentation. Plaintiff, having withdrawn his demand for specific performance, stands before the court insisting that he was not obliged to accept the title, and that defendant is guilty of a breach of the contract. We are of opinion that defendant was not guilty of a breach of the contract, and that it was the duty of the plaintiff to take title.

It follows that plaintiff was not entitled to recover the down payment or the costs and expenses of examining the title, and that the judgment should be affirmed, with costs. All concur.